No. 23-1315

I<small>N THE</small>

# United States Court of Appeals

<small>FOR THE</small> S<small>EVENTH</small> C<small>IRCUIT</small>

———————————

U<small>NITED</small> S<small>TATES OF</small> A<small>MERICA</small>,

*Plaintiff-Appellee,*

v.

S<small>HAMONE</small> W<small>HITE</small>,

*Defendant-Appellant.*

———————————

On Appeal from the United States District Court
for the Central District of Illinois, No. 22-cr-20012
The Honorable Colin S. Bruce, United States District Judge

———————————

**BRIEF FOR THE UNITED STATES**

———————————

G<small>REGORY</small> K. H<small>ARRIS</small>
  *United States Attorney*

K<small>ATHERINE</small> V. B<small>OYLE</small>
  *Assistant United States Attorney*
  *Office of the United States Attorney*
  *201 South Vine Street, Suite 226*
  *Urbana, Illinois 61802*
  *(217) 373-5875*

# TABLE OF CONTENTS

Page

TABLE OF CASES, STATUTES AND OTHER AUTHORITIES.............................iii

JURISDICTIONAL STATEMENT ..................................................................... 1

ISSUES PRESENTED FOR REVIEW ................................................................ 2

STATEMENT OF THE CASE............................................................................. 3

I.   Factual Background ................................................................................. 3

    A. Offense Conduct ................................................................................ 3

    B.  Criminal History .............................................................................. 15

II. The District Court Proceedings ............................................................. 16

    A. Indictment....................................................................................... 16

    B.  Proposed Jury Instructions............................................................. 16

    C.  Trial ................................................................................................. 17

    D. Post-Trial Motions .......................................................................... 28

    E.  Sentencing....................................................................................... 31

SUMMARY OF THE ARGUMENT ................................................................. 32

ARGUMENT .................................................................................................... 33

I.   Ample Evidence Supported The Jury's Guilty Verdict On The Firearm-
     Related Counts .................................................................................... 33

    A. Standard of Review ......................................................................... 33

    B.  Legal Framework............................................................................. 34

i

C. Analysis ................................................................................................... 37

II. The District Court Acted Within Its Discretion In Providing The Jury
Instruction Defining "On Or About" ..................................................... 46

    A. Standard of Review .............................................................................. 46

    B. Analysis ................................................................................................. 46

CONCLUSION .............................................................................................. 52

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES

Page(s)

**Cases**

*Reyes v. United States*, 998 F.3d 753 (7th Cir. 2021) ...................................... 46

*United States v. Armbruster*, 48 F.4th 527 (7th Cir. 2022) ..................................... 34, 37

*United States v. Adkins*, 743 F.3d 176 (7th Cir. 2014) ................................... 48

*United States v. Alcorn*, 638 F.3d 819 (8th Cir. 2011) ................................... 48

*United State v. Blanchard*, 542 F.3d 1133 (7th Cir. 2008) ................................ 23, 48

*United States v. Cherry*, 921 F.3d 690 (7th Cir. 2019) ................................... 35

*United States v. Dabney*, 498 F.3d 455 (7th Cir. 2007) ................................... 44

*United States v. Davis*, 896 F.3d 784 (7th Cir. 2018)................................. 35, 36

*United States v. Ellis*, 622 F.3d 784 (7th Cir. 2010) ........................................ 48

*United States v. Farmer*, 38 F.4th 591 (7th Cir. 2022) ................................... 34

*United States v. Fitzpatrick*, 32 F.4th 644 (7th Cir. 2022)................................ 33

*United States v. Hidalgo-Sanchez*, 29 F.4th 915 (7th Cir. 2022)....................... 33, 34, 40

*United States v. Hudson*, No. 23-1108, 2023 WL 7890040
   (7th Cir. Nov. 16, 2023)................................................................ 41

*United States v. Johnson*, 916 F.3d 579 (7th Cir. 2019) ................................. 45

*United States v. Kruger*, 75 F.App'x 514 (7th Cir. Aug. 21, 2003)....................... 30, 50

*United States v. Lane*, 267 F.3d 715 (7th Cir. 2001)....................................... 35

*United States v. Leibowitz*, 857 F.2d 373 (7th Cir. 1988)............................ 30, 47, 48, 49

*United States v. Matthews*, 520 F.3d 806 (7th Cir. 2008) .............................. 35, 43

*United States v. Miller*, 891 F.3d 1220 (10th Cir. 2018) ................................ 47

*United States v. Naidoo*, 995 F.3d 367 (5th Cir. 2021).................................... 47

iii

*United States v. Norwood*, 982 F.3d 1032 (7th Cir. 2020) ........................................34, 44

*United States v. Perryman*, 20 F.4th 1127 (7th Cir. 2021) ...............................................45

*United States v. Ross*, 412 F.3d 771 (7th Cir. 2005)........................................................48

*United States v. Sangiovanni*, 660 F. App'x 651 (10th Cir. 2016) ...............................49

*United States v. Stevenson*, 979 F.3d 618 (8th Cir. 2020) ...............................................47

*United States v. Thomas*, 970 F.3d 809 (7th Cir. 2020)....................................32, 46, 51

**Statutes**

18 U.S.C. § 922 ...............................................................................................passim

18 U.S.C. § 924 ...............................................................................................passim

21 U.S.C. § 841 ........................................................................................................16

**Other Authorities**

Fed. R. Crim. P. 29 ................................................................................................22

The Committee on Federal Criminal Jury Instructions of the Seventh Circuit,
    *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit*
    (2020 ed.)..........................................................................................................passim

## JURISDICTIONAL STATEMENT[1]

The jurisdictional summary in the defendant's brief is complete and correct.

---

[1] Our citations to the record use the following abbreviations: "D.E." means "docket entry"; "R." followed by a number refers to the document bearing that number on the district court's docket; "PSR" refers to the revised presentence report (R. 49); "Tr." refers to the transcript of the October 2022 jury trial (R. 78, 79, 80); "Gov. Ex." followed by a number refers to the government exhibit bearing that number that was introduced at the trial; and "Def. Br." refers to the defendant's opening brief in this appeal.

## ISSUES PRESENTED FOR REVIEW

I.  Was the evidence sufficient to support the jury's guilty verdicts on two counts of the indictment: possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(2), and carrying a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c).

II.  The indictment charged the defendant with drug-trafficking and firearm-related crimes occurring "on or about" January 29, 2022. Evidence presented at trial indicated that the defendant possessed the firearm at issue both on January 29, 2022, and approximately a week earlier.

Did the district court act within its discretion in providing a pattern jury instruction noting the indictment language and stating that the government had to prove that the crime happened "reasonably close" to January 29, 2022, but was "not required to prove that the crime happened on the exact date." In any case, even if the instruction was provided in error, is reversal not warranted where it is clear the jury was not misled and the defendant was not prejudiced.

## STATEMENT OF THE CASE

The defendant, Shamone White, raises two challenges on direct appeal following his convictions for drug trafficking and firearm offenses. First, he argues that the jury's guilty verdict on the firearm-related counts was not supported by sufficient evidence. Def. Br. 22-33.[2] Second, he claims that the district court abused its discretion in providing a pattern jury instruction informing the jury that (1) the indictment charged White with firearm and drug trafficking crimes occurring "on or about" January 29, 2022, and (2) the government had to prove the crime happened "reasonably close" to January 29, 2022, but was "not required to prove that the crime happened on the exact date." Def. Br. 34-40. Neither of his claims has merit.

I.  Factual Background

A. Offense Conduct

On Saturday, January 29, 2022, deputies with the Kankakee County Sheriff's Office saw a silver Chevrolet Sonic driving at a high rate of speed through Kankakee, Illinois. Tr. 74, 162, 186. They followed the car to the parking lot of a liquor store, where they observed Elijah Campbell exit the driver's seat and saw another individual, later identified as White, remain in the car's passenger seat.

---

[2] White admitted below and on appeal that there was ample evidence supporting his drug-trafficking conviction. Def. Br. 20; *see also* R. 43.

Tr. 74-75, 185-87. Campbell, the deputies later learned, needed cigarettes and had stopped at the liquor store to buy some. Gov. Ex. 2C at 2:17-22, 28-32, 3C at 0:43-59.[3]

The deputies, Griffin Able-Bernier and Calvin Zirkle, were familiar with Campbell and believed that he had a suspended driver's license and was required to use a Breath Alcohol Ignition Interlock Device following a driving-under-the-influence conviction. In fact, they had previously let him go with a warning for driving on a suspended license and without that device. Tr. 72-73, 162, 185, 191.

The deputies continued to surveil the car upon Campbell's return, following it to a takeout restaurant, where White got out of the passenger seat and went toward the store. Tr. 75-77, 87-88, 187. The deputies approached the car to speak with Campbell, noticing a strong odor of unburnt cannabis and that the car lacked the required breathalyzer device. Tr. 78, 191-92. They saw Campbell waiting in the driver's seat. They requested that he exit the car and placed him in handcuffs in the backseat of their patrol car. Tr. 79, 90, 187, 192.

Zirkle asked what Campbell wanted to do with the car – which the deputies typically would tow – and Campbell requested that it be driven to his girlfriend's house, since it was her car and she was pregnant and needed it for appointments.

---

[3] The timestamps for the exhibit clips used herein correspond to the run time for each individual clip.

Tr. 80. The deputies confirmed the car was registered to a female. Tr. 80. Campbell did not claim ownership over any of the car's contents. Tr. 173.

During this timeframe, the deputies saw White standing outside the restaurant and told him he could get his food. Tr. 79, 90, 168; Gov. Ex. 3A at 1:00-04. White offered multiple times to take the car to Campbell's significant other's house and asked if he could retrieve a bag from it. Tr. 91-92, 194; Gov. Exs. 1C, 2A at 0:01-20, 3A at 0:18-26, 0:39-41, 1:05-17. The deputies clarified that White wanted the blue bag. Gov. Ex. 3A at 1:11-15. They also told White that they were going to search the car to make sure there was no contraband within it and said that he would be able to take the car if there was not. Gov. Ex. 3A at 0:07-15, 0:43-52.

Able opened the car's rear passenger-side door and saw the blue bag and another, smaller gray bag sitting directly next to it on the rear passenger-side seat. Tr. 93, 165; *see also* Gov. Ex. 1C. He asked White what was in the blue bag, and White told him it had his daughter's PlayStation in it and bunch of "miscellaneous stuff" he brought to his hotel. Tr. 91-92, 194; Gov. Exs. 1C; 3A at 1:15-21.



Gov. Ex. 8B (labels added, screenshot from Able's body camera, showing position of blue and gray bags when he first saw them, Tr. 100).

Both bags were on the passenger side of the car, adjacent to a child's car-seat base that was clipped into the center of the backseat. Tr. 93. Able retrieved the blue bag from the rear passenger seat and confirmed that it was White's. Gov. Ex. 3A at 1:30-37. He asked White if there was any contraband in it, and White said no. Tr, 94-95; Gov. Ex. 3A at 1:37-50. Able gave the blue bag to White, who set it down. Tr. 94.

At that point, Able picked up a gray Swiss Gear bag that had been sitting directly next to the blue bag and shook it, noting there was something very heavy inside that could be a firearm. Tr. 94. Able asked White if that bag was his as well.

6

Tr. 95; Gov. Ex. 3A at 1:47-55. White hesitated but said that it was not. Tr. 95, 166; Gov. Ex. 3A at 1:47-58.

Able then leaned into the car, opened the gray bag's largest compartment, and found a Walther Creed 9mm pistol with a magazine inserted. Tr. 95-96, 133. That shifted the focus of the investigation from a basic traffic stop to an investigation of a possible firearm offense. Tr. 96. It also sparked Able's concerns regarding safety and what might be in the blue bag. Tr. 95-96. He told White the deputies would probably be towing the car based on what had been found in the gray bag. Tr. 133; Gov. Ex. 3A at 2:06-10.

Able turned to White and asked him what was in the blue bag. Tr. 96-97; Gov. Ex. 3A at 2:12-16. White again told him it only contained a PlayStation. Gov. Ex. 3A at 2:14-18. Able told him to open the bag. Gov. Ex. 3A at 2:19-21. As White unzipped it, Able saw marijuana. Tr. 97, 134. He asked White what it was, and White replied, "Smoke," which Able understood to be street slang for marijuana. Tr. 97; Gov. Exs. 2B at 0:11-15, 3A at 2:21-25. Able inspected the bag and also saw a large amount of cash. Tr. 101, 134, 195; Gov. Ex. 3A at 2:38-42.



Gov. Ex. 8C (label added).

A later inspection would reveal that the blue bag contained over a kilogram of marijuana in total, in three separate plastic bags. Tr. 101, 134-36, 195. Two of the bags appeared to be vacuum-sealed, a common technique to minimize marijuana odor, and the strains of marijuana they contained appeared to be written on them. Tr. 103, 136-37. The third bag – which had been vacuum sealed and then ripped open – held nine pre-packaged baggies of marijuana, each containing about an ounce of the drug, presumably for distribution purposes. Tr. 101, 103-04, 137. The blue bag also contained more than $3,000 in cash – some of which was bagged with additional marijuana – and a mostly empty box of plastic storage bags commonly used for drug-trafficking purposes. Tr. 138-40, 155-56, 195. The only PlayStation

game included was Madden 22, a football video game. Tr. 102. And the blue bag also held a stick of deodorant and underwear. Tr. 119.

The deputies arrested White at that point. Tr. 121, 195-97; Gov. Exs. 2A at 0:15-40, 3A at 2:33-36. They patted White down, and Able discovered an additional 10 grams of suspected cannabis in two baggies in White's right front pants pocket and more than $1,000 on his person. Tr. 105, 141-42. 196-98; *see also* Gov. Exs. 1D, 1E, 3B at 0:06-17. The deputies also found just over $1,000 in White's wallet. Tr. 105, 196-97. Zirkle recovered a pack of KOOL cigarettes in White's jacket pocket and a hotel card in his back pocket. Tr. 105-06, 196, 200-01. Able also found fingernail clippers. Tr. 196; *see also* Gov. Ex. 2C at 0:08-13.



Gov. Ex. 8O (label added, depicting the Kool Cigarettes that Zirkle recovered from White's pocket, Tr. 200-01).

During the pat-down, White reiterated that the gray bag was not his bag. Gov. Exs. 2C at 1:11-27, 3C at 0:26-42. He said he was not aware of any other contraband in the car. Gov. Ex. 2C at 1:15-18. Having already claimed ownership of the blue bag, however, White told law enforcement that the marijuana in that bag was his and he bought it for $1,200 from a guy named Tito on "Thursday." Tr. 199-200; Gov. Ex. 2C at 1:30-44, 4:09-14. He said Campbell – the son of an old friend – knew nothing about it. Gov. Ex. 2C at 1:53-2:01. At some point during their conversation, White told the deputies that he had only been getting a ride from Campbell and was staying at a local hotel. Tr. 107; Gov. Ex. 2C at 1:48-2:03. White offered alternate explanations for riding with Campbell. He explained that Campbell had stopped at the liquor store to buy cigarettes, while he was giving White a ride to buy food. Gov. Exs. 2C at 2:17-22, 28-32, 3C at 0:43-59. White also said that Campbell was giving him a ride to buy a car, and that White intended to try to make that purchase and then return to the hotel to see his nine-year-old daughter. Tr. 110; Gov. Ex. 2C at 1:48-2:30, 3:39-43.

Able conducted a more thorough search of the gray bag, both at the scene and later. Tr. 111, 114; *see also* Gov. Ex. 3D. Inside was the 9mm pistol, which contained five rounds; a box containing forty-three 9mm rounds; a small bag containing nine

.40 caliber S&W rounds; two scales with suspected marijuana residue; and a toothbrush with a travel cover. Tr.113-15, 147-48, 151, 157-59, 200. In the side compartment of the bag was a pack of KOOL cigarettes, with six cigarettes remaining. Tr. 113, 159, 170. *See also* Gov. Exs. 7A-7H.



Gov. Ex. 8I (labels added); *see also* Tr. 118-19.

The deputies continued their search of the car, in line with their general policy of conducting inventories of the contents of vehicles that have to be towed. Tr. 121-22; *see also* Gov. Exs. 1G, 3E. They were also looking for additional contraband, given their prior discoveries. Tr. 123. When they looked at the driver's area, where Campbell had been sitting, they discovered an empty box of Newport cigarettes in the driver's side door, a box of Newport cigarettes in the center console, and a

box of Newport cigarettes on the dash area. Tr. 123-25, 160; *see also* Gov. Exs. 3E at 1:20-38, 8L-8M.



Gov. Ex. 8M (label added).



Gov. Ex. 8L (labels added). They did not discover any cigarettes, Newports or otherwise, in the passenger area where White had been sitting. Tr. 125-26; *see also* Gov. Ex. 8N.

Around the same time frame, Zirkle had approached White and, for the first time, asked him about the gun in the gray bag, without any deputy having shown White the gun in question or told him what type it was. Tr. 112-13, 201-03.

> **Zirkle**: Hey dog – so we found that gun in there, okay. Is there gonna be any reason that you put your hands on it or anything like that? Is there gonna – any DNA on there?
>
> **White**: Not that I know – I didn't know it was in there today.
>
> **Zirkle**: Okay.
>
> **White**: But, I don't – I don't know if I touched it before but I know I didn't touch it today because I didn't [know] it was there.
>
> **Zirkle**: Okay. So maybe at some point if – if we do, you know, send it off to the lab –
>
> **White**: Yeah – I mean I – I admit I have touched it but it wasn't – I didn't even know it was in there today.
>
> **Zirkle**: Okay.

Gov. Ex. 2D at 0:01-47. During this exchange, White exhibited no confusion over what gun had been found. Tr. 203.

13

Zirkle then inquired further:

> **Zirkle**: Gotcha. Um, you say you may have touched that firearm at one time? About how long ago do you think you touched it? Have you ever shot it?

> **White**: No – never shot it.

> **Zirkle**: Okay. About how long ago would you say you touched that firearm?

> **White**: Saturday.

> **Zirkle**: Saturday? Okay.

> **White**: Last Saturday.

> **Zirkle**: Last Saturday.

> **White**: Last Saturday.

> **Zirkle**: Okay. And –

> **White**: First time I seen it.

> **Zirkle**: Okay. Is it his?

> **White**: I – I don't know who – if it's his, somebody else's or (unintelligible).

> **Zirkle**: Okay.

> **White**: I didn't know it was there today (unintelligible). There was other people around the area (unintelligible).

Gov. Ex. 2E at 0:01-49; *see also* Tr. 160, 181, 201-02; Gov. Ex. 3E at 1:38-42.

No drugs or cash were found on Campbell that day. Tr. 206. Officers also learned while at the scene of the traffic stop that the Walther Creed pistol located in the Swiss Gear bag had been reported stolen in 2019 from a truck located in Coles County, Illinois. Tr. 150-51.[4]

B.  Criminal History

At the time of his arrest in this case, White had multiple prior felony convictions barring him from possessing firearms, including state convictions for aggravated felony sexual abuse (occurring when White was under the age of seventeen with a victim who was under the age of nine), criminal sexual assault (of an underage victim), unlawful failure to inform of change of address as a sex offender, forgery, unlawful violation of an order of protection, failure to register as a sex offender (three), unlawful residency of a child sex offender, sex offender residency offense, and domestic battery. PSR ¶¶ 49-53, 55-59. White also had a misdemeanor conviction for domestic battery and a traffic conviction for driving without a license. PSR ¶¶ 54, 60.

---

[4] The factual background section of White's opening brief contains a transcript of a short conversation between Able and Campbell that was captured on Able's body camera footage, in which Campbell said that he smokes Newports. Def. Br. 10-11; *see also* Gov. Exs. 3, 3-TR. According to the trial record, however, that excerpt was never played for the jury, so the government has not included the related information here. It is also the government's understanding that neither the full Exhibit 3 nor the full associated transcript, Exhibit 3-TR, were provided to the jury before or during their deliberations. *Cf.* Def. Br. 28-29.

II. The District Court Proceedings

   A. Indictment

   In March 2022, a federal grand jury sitting in the Central District of Illinois returned an indictment charging White with possession with intent to distribute substances containing a detectable amount of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Count One); carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two); and possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Three). R. 1. For each of the counts, the indictment stated that the crime charged occurred "[o]n or about January 29, 2022." *Id*.

   B. Proposed Jury Instructions

   The government provided proposed jury instructions in September 2022. R. 20. As relevant here, the government included a general instruction stating

> The indictment charges that the crime happened "on or about" January 29, 2022. The government must prove that the crime happened reasonably close to the date. The government is not required to prove that the crime happened on the exact date.

R. 20 at 36; R. 32 at 21.

16

C. Trial

   1.  Government's case-in-chief

The case proceeded to jury trial in October 2022. The government's evidence largely reflected the above factual summary. *See supra*, pp. 3-15. Its witnesses included Able, who testified about the traffic stop, his discussion with White, and the searches of the blue and gray bags, Tr. 67-160. Able also explained that the scales such as those found in the gray bag are typically used for measuring marijuana or other narcotics. Tr. 151. He stated that Ziploc bags – like those in the box in the blue bag – would be used to break bulk marijuana down into smaller portions. Tr. 156; *see also* Gov. Ex. 6A.

On cross-examination, Able confirmed that as a patrolman he often handled on-the-ground investigations that were then passed off to detectives, yet in this instance he and his partner chose to arrest White rather than Campbell for possession of the gun, in part due to the cigarettes each appeared to possess. Tr. 161-65, 171-72. Able also confirmed that both Kool and Newport cigarettes were menthol cigarettes. Tr. 170. And Able agreed that it was possible that from time to time Campbell smoked a Kool and White smoked a Newport. Tr. 171.

The government then called Zirkle, who also testified about the traffic stop, the bag searches and pat-down, and his conversation with White regarding the firearm in the gray bag, Tr. 182-203. On cross-examination, the defense attorney

asked Zirkle whether he ever questioned Campbell regarding the firearm, and Zirkle said he had, after speaking to White. Tr. 204-05. The defense also asked if Zirkle had asked White any follow-up questions beyond querying whether he shot the firearm, and Zirkle said he had not. Tr. 205.

The government's final witness was Clayt Wolfe, a master sergeant with the Illinois State Police and the director of the Kankakee Area Metropolitan Enforcement Group ("KAMEG"), who testified as a drug expert, Tr. 209-37. KAMEG is a multi-jurisdictional unit covering three Illinois counties whose primary focuses include enforcing narcotics, firearm, gang, and human trafficking laws. Tr. 210-12.

Among other information, Wolfe explained that drug dealers often buy in bulk and break drugs down into smaller amounts to sell, using digital scales. Tr. 228-29. Vacuum-sealed bags and Ziploc bags were other common tools of the drug trade. Tr. 229. Dealers might carry multiple baggies of a certain narcotic, while users would typically carry about one. Tr. 230. And drug dealers typically dealt in cash transactions. Tr. 230-31.

The government showed Wolfe a photograph of the marijuana evidence in the instant case, and Wolfe noted those same indicators of drug trafficking. Tr. 234-35; *see also* Gov. Ex. 8D. He also agreed that a kilogram of marijuana would likely belong to a dealer rather than a user. Tr. 235. And, when presented with a

photograph of the cash found during the traffic stop, Wolfe said that such large amounts of bulk cash were consistent with drug trafficking. Tr. 235-36; *see also* Gov. Ex. 8K.

Wolfe further stated that drug dealers often carry firearms – frequently loaded handguns – to protect assets including drugs and cash. Tr. 231-33. These guns are often stolen. Tr. 232-33. When drugs and guns are found together, Wolfe said that dealers often try to distance themselves from the firearms. Tr. 232. Presented with a photograph of the firearm, scales, and cell phone, Wolfe said in concert they would be indicative of drug trafficking. Tr. 236; *see also* Gov. Ex. 8J.

The defense cross-examination centered in part on whether any of these indicators – marijuana, scales, cell phones, firearms, cash – might alone indicate an individual was a drug dealer. Tr. 237-38. Wolfe acknowledged other uses. Tr. 238. Wolfe also said that it was not common for simple drug users to carry scales, but agreed that he was sure he had met a user who had. Tr. 242. The defense also attempted to suggest a marijuana dealer was less likely to need protection than other drug traffickers. Tr. 239-41.

Wolfe clarified on re-direct that dealers were often vulnerable to robbery due to the amount of money or value of the drugs they carried. Tr. 243-44. And he agreed that the marijuana trade was quite profitable. Tr. 244.

The district court also read the parties' stipulations to the jury. The court informed the jury that prior to January 29, 2022, White had been convicted of a felony crime that was punishable by a term of imprisonment of more than one year and that White was aware of that conviction. Tr. 149-50. The court also told the jury that the Walther Creed 9mm handgun was a weapon that would and was designed to expel a projectile by the action of an explosive and it was not an antique firearm. Tr. 150. Furthermore, the firearm had been manufactured outside the State of Illinois and had been shipped and transported in interstate commerce prior to January 29, 2022. *Id*. And it had been reported stolen to the Cole County, Missouri, Sheriff's Department sometime between July 6 and 10, 2019. *Id*.

The district court read an additional stipulation to the jury regarding the work of Nicholas Beno, a qualified forensic chemist working for the Drug Enforcement Administration's North Central Laboratory. Tr. 152. The parties agreed that Beno had used a properly calibrated scale to weigh the drugs contained in each exhibit. Based on his analysis, Beno had concluded that Government Exhibits 5A through 5K all contained marijuana and had a combined weight of 1096 grams. Tr. 152. Beno also found that Government Exhibit 5M contained 20.1 grams of marijuana. *Id*. All of this marijuana had been seized from the blue bag. R. 37 at 2. Beno determined that Government Exhibit 6B –the marijuana taken from White's pocket – weighed 8 grams. Tr. 152; R. 37 at 2. And Government Exhibit 7C – the scales

seized from the gray bag – contained trace residue of 9-tetrahydrocannabinol (or THC). Tr. 152; R. 37 at 3. A proper chain of custody had been maintained on the exhibits. Tr. 152.

The government's exhibits included dash camera footage from the traffic stop (Gov. Exs. 1A-1H); Zirkle's body camera footage and an associated transcript (Gov. Exs. 2A-2E, 2-TR); Able's body camera footage and an associated transcript (Gov. Exs. 3A-3E, 3-TR); the blue bag (Gov. Ex. 4); marijuana evidence seized from blue bag (Gov. Exs. 5A-5M); storage bags (Gov. Ex 6A); bags containing marijuana seized from White's pocket (Gov. Ex. 6B); the gray bag (Gov. Ex. 7); the Walter Creed 9mm handgun and magazine with five 9mm rounds (Gov. Ex. 7A, 7F); the bag with .40 caliber ammunition rounds (Gov. Ex. 7B); digital scales (Gov. Exs. 7C-D); the box with 9mm ammunition rounds (Gov. Ex. 7E); the pack of Kool cigarettes from the gray bag (Gov. Ex. 7G); the toothbrush from the gray bag (Gov. Ex. 7H); and photographs and body camera footage screenshots of evidence discovered in the car (Gov. Exs. 8A-8O).

2. Denial of Rule 29 motion

Following the close of the government's case in chief, the defense made a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. Tr. 246. The court denied the motion, stating that viewing the evidence in the light most favorable to the government, there was "sufficient evidence for a rational

finder of fact" to find that the government had proven each of the elements for each of the charges beyond a reasonable doubt. Tr. 247.

　　3.　Jury instruction conference

　　The court then held a jury instruction conference. Tr. 258-90. As relevant here, the defense objected to the instruction stating:

> The indictment charges that the crime happened "on or about" January 29, 2022. The government must prove that the crime happened reasonably close to the date. The government is not required to prove that the crime happened on the exact date.

R. 32 at 20-21; Tr. 271. White's attorney explained that "the evidence was uniform that this happened on January 29th." *Id*. He said that given the evidence that White had said he touched the gun previously, he did not want there to be "confusion on the part of the jury that maybe it didn't happen on the 29th, but it could have happened on a previous date." *Id*. The government explained that this Court had approved the "on or about" language to ensure a crime occurred "reasonably close" to the date in the indictment and said it was an appropriate and necessary instruction in this case. *Id*.

　　The district court indicated it was inclined to agree with the government because "on or about" may include evidence that an offense happened prior to the date listed. Tr. 271-72. The court asked defense counsel if it was part of his theory of the case that White did handle and possess the firearm, just not on the date listed

22

in the indictment. Tr. 272. Defense counsel explained that it was not. *Id*. White's attorney said he was concerned that the jury might decide it was not sure if White knew the gun was in the car, but convict him on the basis of his statement that he had touched the gun a week prior – in essence, concluding that White was guilty because the indictment said "on or about January 29th," and "that can be whenever." *Id*. Counsel stated that the committee comments to the pattern jury instructions indicated that the instruction was unnecessary in the average case where no discrepancy exists between the date charged and the date suggested. Tr. 272-73.

The court inquired whether the government intended to argue that White was guilty of possessing a firearm as a felon even if he possessed it the week before the date listed in the indictment, and the government said it did, describing the offense as "continuing." Tr. 273, 280-81. The government later clarified that it intended to argue that White possessed the gun on January 29th but also would state that his prior contact with the gun was "reasonably close" to that date. Tr. 287.

The district court returned to the issue later after completing independent research and decided to give the instruction, relying on the commentary to Seventh Circuit Criminal Pattern Jury Instruction 4.05 and this Court's decision in *United State v. Blanchard*, 542 F.3d 1133 (7th Cir. 2008). Tr. 285-86; *see also* The Committee on Federal Criminal Jury Instructions of the Seventh Circuit, The

William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit, § 4.05 (2020 ed.). The district court stated that the instruction was appropriate where it reflected the phrasing of the indictment and where the "on or about" language was not stretched to include dates beyond twenty-one days. *Id*.

### 4.  Jury instructions

The court subsequently instructed the jury and provided the instruction containing the "on or about" language. Tr. 303; *see also* R. 41 at 18.

### 5.  Closings

During closing arguments, the government urged the jury to use its common sense: White was a drug dealer who carried the firearm to protect his illegal drug trafficking trade. Tr. 313-14. Factors supporting its theory included the dealer amounts of marijuana and cash that White carried (and Campbell did not) and White's associated need for protection. Tr. 313-14, 321-22, 325, 328. Combined, both bags represented all the tools of the drug trade. Tr. 323, 325.

Additional evidence included the Kool cigarettes on White's person and in the gray bag with the firearm, and the testimony showing that Campbell smoked and had just purchased additional Newports after depleting the pack in the driver's side door. Tr. 316-23, 325-27. The government also noted White's efforts to prevent officers from searching the car and bags within it and, once it became evident they would, to engage in damage control and distance himself from the bag with the

24

firearm, given that he had already claimed the blue bag. Tr. 319. And the government highlighted the basic toiletries in both the blue and gray bags, which a person, like White, staying at a hotel would need. Tr. 316, 324.

The government also argued there was no doubt that White possessed the firearm in light of his statement that he had touched the gun. Tr. 327. The government stated that even that "fleeting possession" indicated White's guilt and further said that touching the gun within the week prior to his arrest was "reasonably close" to the date listed in the indictment. Tr. 327. The government then told the jury to be realistic about what had happened on January 29th: White had a gun that he knew he was not supposed to have because he was a convicted felon, and he carried it to protect his drug trade. Tr. 328. The government explained that White's statement that he touched the gun the previous Saturday was an attempt to mislead the deputies and avoid responsibility for the gun should his fingerprints or DNA be found on it. Tr. 328-29. And it was especially striking that White made that admission without having any details about the type of weapon the deputies had found or having been shown the firearm – tellingly, he seemed to know exactly which gun was in the car. Tr. 329-330. Campbell, by contrast, told the deputies the gray bag was not in the car before he gave White a ride and it was not his. Tr. 316, 330.

Finally, the government told the jury that the evidence demonstrated that White had carried the gun during and in relation to a drug crime, noting its potential to facilitate and provide protection during drug deals. Tr. 332-33. The government emphasized the accessibility of the firearm, which was next to the drugs and the drug profits. Tr. 333-34. It was a handgun, which was easy to conceal and also was the preferred firearm of drug dealers. *Id*. It had been stolen, and it was common for drug dealers to have stolen firearms that they are prohibited from using, either on that basis or also due to their felon status. Tr. 334. The firearm was loaded. Tr. 334.

Defense counsel told the jury that if the gray bag had belonged to White he would have fled after seeing the officers approach the car. Tr. 336. He also suggested that it made no sense for White to claim ownership over one bag, knowing it contained illegal items, but not the other when he knew he was likely going to jail in connection with the blue bag regardless. Tr. 337-38, 344. The gray bag was within both men's reach in the car and contained no luggage tags or wallet with definitive proof of ownership. Tr. 339. Additionally, the car did not belong to White or Campbell, and the bag might not have been either man's possession. Tr. 339. White's efforts to drive the car back to Campbell's girlfriend were altruistic, to save them the time and money involved in retrieving a towed car. Tr. 344-45.

26

The defense attorney argued that the deputies should have considered both White and Campbell to be suspects and passed the case on to detectives. Tr. 340. Rather than taking this step, the deputies had inappropriately relied on the Kools cigarettes found in the gray bag and on White's person to decide that the bag and firearm were his. Tr. 340-41.

Moreover, White's admission that he had touched the gun did not amount to an admission of possession. Tr. 341-42. And the deputies' lack of follow-up questions meant they forfeited the opportunity to show otherwise as did law enforcement's purported failure to test the items in the bags for DNA and prints. Tr. 343.

In rebuttal, the government pointed out the limited utility of laboratory testing where White had already admitted to touching the items. Tr. 347. The government also emphasized that its case did not come down to cigarettes – the Kools were just one element of a much greater whole. Tr. 348. And while touching certainly did not equal possession, it was "extremely powerful evidence of possession." Tr. 349-50. Finally, the government noted that in claiming only the blue bag, White made an effort to get some of his possessions back while attempting to limit the risk that he would be arrested for illegal firearm possession. Tr. 351.

6. Verdict

The jury returned verdicts of guilty on all counts after deliberating for less than three hours. Tr. 354-58.

D. Post-Trial Motions

Shortly after the trial, White filed a motion for an acquittal and a motion for a new trial. R. 43, 44. In the motion for acquittal, White renewed his Rule 29 motion as to Counts Two and Three, acknowledging that his attorney had admitted guilt on Count One during closing. R. 43. He reiterated his arguments that he did not possess the firearm in question, constructively or otherwise, and that law enforcement had not proven its case. R. 45.

In his motion for a new trial, White again argued that the court should have sustained his objection to the "on or about" instruction. R. 44. He reprised his argument that the instruction might have led the jury to convict White based on his admission that he touched the gun a week prior alone, even if the jury did not determine that he possessed it on the date of the traffic stop. R. 46 at 4. The government opposed both motions. R. 47.

The district court denied both motions. R. 52. In denying the motion for acquittal, the court first commented that White had failed to meet his "heavy burden of demonstrating that *no* reasonable trier of fact could have found him guilty beyond a reasonable doubt" as to the charged offenses. *Id.* at 4. The court

cited evidence presented at trial that supported the guilty verdict including evidence that:

- White was a drug dealer, based on his admitted ownership of the blue bag and its contents, which included thousands of dollars of marijuana, prepared for distribution.

- The contents of the gray bag and blue bags together comprised the "full tools of the drug trade" – money, scales, and a stolen firearm – as described by the government's expert witness.

- The blue and gray bags were immediately adjacent to one another on the rear passenger side of the car.

- Campbell was merely giving White – who was staying at a hotel – a ride.

- No drugs, cash, or firearms were found on Campbell.

- White told the deputies they stopped at the liquor store to get cigarettes for Campbell, which was consistent with the empty box of Newport cigarettes on the driver's side of the car.

- The gray bag contained a pack of Kools that was not empty and matched the Kool cigarettes found on White.

- White admitted to touching the firearm in question.

*Id.* at 4-5.

Turning to the motion for a new trial, the court said that this Court's case law on the issue demonstrated that the instruction was appropriate. R. 52 at 6. The court cited *United States v. Kruger*, an unpublished opinion in which this Court held that challenging such an instruction was "frivolous" because it was

a pattern instruction … and rather than confusing the jury we think it likely clarified the government's burden in this case because there was some uncertainty as to when exactly Kruger possessed the shotgun. *Cf. United States v. Leibowitz*, 857 F.2d 373, 383 (7th Cir. 1988) (holding that '[u]nless the particular date is an element of the alleged offense, it is generally sufficient to prove that the offense was committed on any day before the indictment and within the statute of limitations.')

*Id.* at 7 (quoting 75 F.App'x 514, 518 (7th Cir. Aug. 21, 2003)). Furthermore, in *United States v. Leibowitz*, this Court explained that "[w]here the indictment alleges that an offense allegedly occurred 'on or about' a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date. He therefore cannot make the requisite showing of prejudice based simply on the fact that the government has failed to prove a specific date." *Id.* (quoting 857 F.2d at 379).

The court noted that the indictment used the "on or about" language, yet White failed to file any pretrial motions alleging a deficiency. R. 52 at 7. Nor had any party raised a statute of limitations issue regarding the potential discrepancy between White's possession on January 29, 2022, versus one week earlier. *Id.* And White's statement that he touched the gun was produced in discovery, but White did not attempt to bar its introduction at trial. *Id.*

The court therefore concluded there was no trial error in the jury instructions provided and, regardless, there "was no reasonable possibility that the instruction had a prejudicial effect on the jury's verdict." R. 52 at 8.

E. Sentencing

The district court sentenced White to an aggregate sentence of 144 months' imprisonment, to be followed by concurrent five-year terms of supervised release on each count. D.E. 2/13/2023; R. 56 at 2-3. The sentence of imprisonment consisted of 70 months' imprisonment on Count One and 84 months' imprisonment on Count Three, to run concurrent to each other, and to be followed by a consecutive 60 months' imprisonment on Count Two. D.E. 2/13/2023; R. 56 at 2-3.

The court entered final judgment on February 17, 2023. R. 56. White's timely notice of appeal followed. R. 59.

## SUMMARY OF THE ARGUMENT

First, there was ample evidence to support the jury's guilty verdicts against White for possessing a firearm as a felon and carrying a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. §§ 922(g)(1) and 924(c), respectively.

Second, the district court acted within its discretion in providing a pattern jury instruction informing the jury that (1) the indictment charged White with firearm and drug trafficking crimes occurring "on or about" January 29, 2022, and (2) the government thus had to prove the crime happened "reasonably close" to January 29, 2022, but was "not required to prove that the crime happened on the exact date." *United States v. Thomas*, 970 F.3d 809, 815 (7th Cir. 2020). But even if the court erred, reversal is not warranted, because the jury was not misled and White was not prejudiced. *Id.*

# ARGUMENT

## I. Ample Evidence Supported The Jury's Guilty Verdict On The Firearm-Related Counts

White's challenge to the sufficiency of the evidence supporting his firearm-related convictions rests largely on his allegation that the government's case was based solely on (1) "speculation" regarding the brands of cigarettes White and Campbell smoked, and (2) White's admission that he "touched" the firearm the week prior. Def. Br. 20-21, 26-33. His argument fails upon a holistic view of the record.

### A. Standard of Review

Where a defendant preserves a sufficiency-of-the-evidence argument by moving for judgment of acquittal after the prosecution rests and again following the close of evidence, this Court reviews the claim de novo. *United States v. Hidalgo-Sanchez*, 29 F.4th 915, 924 (7th Cir. 2022). Practically speaking, however, the review is for sufficiency of the evidence. *United States v. Fitzpatrick*, 32 F.4th 644, 648 (7th Cir. 2022).

The defendant's burden in challenging sufficiency of the evidence is "nearly insurmountable." *Hidalgo-Sanchez*, 29 F.4th at 924. This Court reviews the evidence "in the light most favorable to the Government and will overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which

the jury could have found guilt beyond a reasonable doubt." *United States v. Norwood*, 982 F.3d 1032, 1039 (7th Cir. 2020). The Court neither reweighs the evidence nor reassesses witness credibility. *United States v. Farmer*, 38 F.4th 591, 602 (7th Cir. 2022).

"In other words, if there is a reasonable basis in the record for the verdict, it must stand." *Hidalgo-Sanchez*, 29 F.4th at 924 (cleaned up). A defendant thus faces a "nearly insurmountable hurdle" on such a challenge, given the Court's heavy deference to the jury's findings. *United States v. Armbruster*, 48 F.4th 527, 531 (7th Cir. 2022).

B.  Legal Framework

To secure a felon-in-possession conviction, for a violation of 18 U.S.C. § 922(g)(1), the government had to prove each of the following elements beyond a reasonable doubt:

1.  White knowingly possessed a firearm;

2.  At the time of the charged act, White was a prohibited person;

3.  At the time of the possession, White knew he was a felon; and

4.  The firearm had been shipped or transported in interstate or foreign commerce before the defendant received it.

*See* The Committee on Federal Criminal Jury Instructions of the Seventh Circuit, The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit, at

308 (2020 ed.). As White acknowledges on appeal, only the first element was at issue in this case. Def. Br. 23.

The government may prove either actual possession or constructive possession of the firearm in question. *United States v. Davis*, 896 F.3d 784, 790 (7th Cir. 2018). Actual possession can be proven by showing that a felon held a firearm only momentarily. *E.g., United States v. Matthews*, 520 F.3d 806, 810 (7th Cir. 2008) (momentary possession of an unloaded weapon by a felon violates section 922(g)); *United States v. Lane*, 267 F.3d 715, 718 (7th Cir. 2001) (abrogated on other grounds) (same, though declining to address whether touching a gun qualifies); *see also United States v. Cherry*, 921 F.3d 690, 692 (7th Cir. 2019) (brief possession of dropped firearm did not warrant innocent-possession instruction)

This Court has described constructive possession as a legal construct "whereby an individual is deemed to 'possess' contraband items even when he does not *actually* have immediate, physical control of the objects." *Davis*, 896 F.3d at 790. Constructive possession "may be established by demonstrating that the defendant knowingly had both the power and the intention to exercise dominion and control over the object, either directly or through others." *Davis*, 896 F.3d at 790. "This required 'nexus' must connect the defendant to the contraband, and may be established in one of two ways." *Id.* (internal quotation marks omitted). The government can show that the defendant "had either 'exclusive control' over the

property where the [firearm] was found, or a 'substantial connection' to the location where" it was found. *Id.* "[M]ere proximity to contraband is not enough to establish a sufficient nexus." *Id.*

Nonetheless, "proximity coupled with evidence of some other factor – including a defendant's connection with an impermissible item, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement . . . is enough to sustain a guilty verdict." *Davis*, 896 F.3d at 790 (cleaned up). Constructive possession may be proven through direct or circumstantial evidence. *Id.* at 790-91.

To attain a conviction for carrying a firearm during and in relation to a drug-trafficking crime, for a violation of 18 U.S.C. § 924(c), the government had to prove each of the following elements beyond a reasonable doubt:

1. White committed the crime of possessing marijuana with intent to distribute; and

2. White knowingly carried a firearm during and in relation to such crime.

*See* The Committee on Federal Criminal Jury Instructions of the Seventh Circuit, The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit, at 315 (2020 ed.).

C.  Analysis

On this record, White cannot meet the "nearly insurmountable hurdle" of showing that the jury's guilty verdicts on the § 922(g)(1) and § 924(c) counts were not supported by sufficient evidence. *Armbruster*, 48 F.4th at 531. To the contrary, the government presented ample evidence at trial in the form of witness testimony, dash and body camera video, and photographs and screenshots to prove White's constructive possession of the firearm on January 29, 2022, and carrying of a firearm during and in relation to the marijuana trafficking crime on that same date. And that evidence is largely undisputed. Def. Br. 3.

1.  Sufficient evidence supported the § 922(g)(1) verdict

The district court properly held that sufficient evidence supported the jury's determination that White was guilty of possessing a firearm as a felon. R. 52. Initially, White necessarily admits that the government had more than sufficient evidence to prove that he possessed marijuana with the intent to distribute it on January 29, 2022. Def. Br. 20 ("There was never any doubt . . . that Shamone White possessed a distribution amount of cannabis.").

That admission was compelled by the events of the traffic stop. During the stop – in an ill-fated attempt to recover drug wares and cash – White claimed ownership of a blue bag that he said contained his daughter's PlayStation and no contraband. Tr. 91-92, 94-95, 194; Gov. Exs. 1C; 3A at 1:11-21, 1:37-50, 2:14-18. Law

enforcement discovered his lie, however, finding that the bag also held more than a kilogram of marijuana, both in bulk in vacuum-sealed bags and packaged for distribution. Tr. 97, 101, 103-04, 134-37, 195; Gov. Ex. 3A at 1:11-15. The bag – which had been placed in the backseat behind White – contained more than $3,000 in cash as well. Tr. 93, 101, 134, 138-40, 155, 195; Gov. Ex. 3A at 2:38-42. But it lacked other common tools of the drug trade including scales, a firearm, and ammunition.

Those tools were, however, present in the immediately adjacent gray bag that also was located directly behind White's seat. Tr. 93-96, 113-15, 133, 147-48, 151, 157-59, 200. Asked about the gray bag, White hesitated and then denied ownership in an effort to evade responsibility for the firearm. Tr. 95, 166; Gov. Ex. 3A at 1:47-58. But the bag's proximity to the blue bag and the supplemental drug trafficking tools it contained were not the only evidence tying it to him. Most tellingly, White *knew which gun had been found in the gray bag* without ever having been shown the firearm by law enforcement. Gov. Ex. 2D at 0:01-47. Additionally, when first asked about the firearm, White said he did not know whether he had touched it. *Id*. However, when Zirkle suggested that law enforcement would send the gun to a laboratory for DNA testing, White admitted that he had previously touched the firearm. *Id*.

White's status as a known drug dealer and his knowledge regarding the firearm's presence in the gray bag were in combination striking evidence of his

guilt on the felon-in-possession count. And the strength of the government's case was further bolstered by the expert testimony it provided regarding drug dealers' frequent use of firearms for protection, given the drugs and cash they typically carry. Tr. 231-33.

Notably, the evidence also indicated that the only drug dealer in the car was White. White not only acknowledged ownership of the blue bag with a distribution amount of marijuana, he also had an additional 10 grams of cannabis in two baggies on his person, along with thousands of dollars in cash. Tr. 105, 141-42. 196-98; *see also* Gov. Exs. 1D, 1E, 3B at 0:06-17. By contrast, there was no evidence to suggest that Campbell was involved in drug dealing. The deputies did not discover any drugs or cash on his person. Tr. 206. He was merely giving White a ride at the time of the traffic stop. Tr. 110; Gov. Exs. 2C at 2:17-22, 28-32, 1:48-2:30, 3:39-43, 3C at 0:43-59. The deputies did not arrest Campbell because he denied possessing either the blue or gray bags and said those bags were not in the car before White entered it. Tr. 172-75.

Additional circumstances further tied the gray bag – and the firearm – to White. First, White had Kool cigarettes on his person, and Kool cigarettes were present in the gray bag. Tr. 113, 159, 170. Campbell, however, had Newport cigarettes. Tr. 123-25, 160. And White told law enforcement that they had just stopped at the liquor store so that Campbell could purchase cigarettes – a fact that was bolstered

by the empty pack of Newports in the driver's side door of the car. Gov. Exs. 2C at 2:17-22, 28-32, 3C at 0:43-59. Campbell would not have needed to buy cigarettes if the pack of Kool cigarettes in the gray bag belonged to him. Second, White was staying at a hotel, and was therefore likely to have been carrying bags and toiletries – some of which were in the blue bag (deodorant and underwear) and some in the gray bag (a toothbrush), along with a fingernail clippers on his person. Tr. 119, 169, 196.

In short, the evidence presented more than supported the jury's conclusion that White was a drug dealer who possessed and carried a firearm in order to protect his drugs and cash. The jury thus had a "reasonable basis in the record" for its verdict, and the verdict "must stand." *Hidalgo-Sanchez*, 29 F.4th at 924.

White's arguments to the contrary are unpersuasive. He contends that the evidence established at most that the deputies had probable cause to believe White possessed a gun on January 29, 2022. Def. Br. 25-32. But he bases this argument on his claim that the government's sole evidence showing a substantial connection beyond "mere proximity" between White and the gun was "speculation about the brand of cigarettes White supposedly smokes." Def. Br. 27. That of course is incorrect. *See supra*, pp. 37-40.

White's reliance on a law enforcement agent's statement following the traffic stop that White "probably" possessed the firearm in the gray bag (Def. Br. 27) also

does not help his cause. This Court has explained that a law enforcement officer's "after-the-fact, subjective speculation" as to a "legal conclusion" does not "override the effect of the underlying facts" of a case. *United States v. Hudson*, No. 23-1108, 2023 WL 7890040, at *6 (7th Cir. Nov. 16, 2023). White's cherry-picked cross-examination testimony from Able – aimed at further suggesting the deputies' uncertainty – fails for the same reason.

> **Defense Counsel**: Well, it came down to the fact that there were Kool cigarettes in the bag, and you knew that Kool cigarettes had been found on Shamone's person, right?
>
> **Able**: Yes.
>
> **Defense Counsel**: And that locked it up for you as far as you were concerned, right?
>
> **Able**: Yes.

Not only are Able's responses to these questions irrelevant to an objective possession analysis, *Hudson*, 2023 WL 7890040, at *6, White also ignores the plethora of testimony showing the additional connections between White and the firearm. *See supra*, pp. 3-15, 17-19. And Able later averred that White's arrest was based on more than the cigarette evidence. Tr. 174.

White's contention that the government potentially could have – but did not – introduce additional evidence of his guilt also falters. Def. Br. 29-30. In so arguing, he strays from the relevant question – whether the evidence here was sufficient to

support the jury's verdict – in favor of asking if there could have been more. *Id*. That intellectual exercise is of little aid in answering the legal question presented in this appeal.[5]

It is worth noting that sufficient evidence also supported guilt on an alternative theory: White's actual possession of the firearm the week prior. White spends much time arguing that his admission that he touched the gun "last Saturday" does not alone show actual possession on that date. Def. Br. 30-32. In doing so, he embarks upon a detailed discussion regarding whether "the mere ability to 'touch' a gun" – as compared with momentarily holding it – may constitute possession and in what circumstances. *Id*. He also notes out-of-circuit cases suggesting that touching a firearm may not qualify. *Id*.

The Court need not resolve that debate here, though one can imagine circumstances in which willingly touching a firearm would fall under the conduct Congress intended to prohibit in passing § 922(g)(1). As this Court has explained,

---

[5] As to White's postulation that the government might have introduced evidence from Campbell, Def. Br. 29, the record showed that Campbell was unresponsive to both the government and defense counsel's trial subpoenas, Tr. 5-7.

White also suggested that the government could have provided additional forensic evidence regarding the firearm, Def. Br. 29, an argument he also raised in his defense at trial, Tr. 343. In reaching a verdict of guilty, the jury rejected that argument, perhaps agreeing with the government's assertion in closing that additional forensic evidence would have been of limited utility in light of White's admission that he had touched the firearm, Tr. 347.

Congress initially passed that law "to 'prevent the crook and gangster, racketeer and fugitive from justice from being able to purchase *or in any way come in contact with firearms of any kind.'" *Matthews*, 520 F.3d at 808 (internal citation omitted) (emphasis in original). Throughout the law's subsequent history, "this purpose has remained constant." *Id*. (internal citation omitted). "*From the purpose of the Act, it is reasonable to infer that Congress intended to prohibit felons from exercising any physical control over a gun.*" *Id*. (internal citation omitted) (emphasis in original). And the Court has further commented that "[p]hysical control over a gun is remarkably easy to effect" in concluding that fleeing possession demonstrates such control. *Id*. (internal citation omitted).

White's argument fails regardless, though, because it inappropriately isolates his admission that he touched the firearm from the significant surrounding evidence gathered from the January 29, 2022, traffic stop. Def. Br. 30-32. That approach is incorrect. Just as the jury might consider whether White's admission that he had earlier touched the gun could support a determination that White constructively possessed the firearm on the date of his arrest, the jury also was entitled to weigh whether the evidence from the traffic stop – including the contraband discovered in the blue bag and the fact that White somehow knew what firearm was in the gray bag and admitted that he had touched it – indicated that White's prior touching rose to the level of actual possession. A reasonable

43

juror could reach the conclusion that it did. In other words, White has not shown that there was "no evidence" in the record "from which the jury could have found guilt beyond a reasonable doubt" on this theory of the case, either. *Norwood*, 982 F.3d at 1039.

### 2. Sufficient evidence supported the § 924(c) verdict

White's argument regarding the sufficiency of the evidence supporting his § 924(c) conviction mirrors his claim that the evidence supporting his § 922(g)(1) conviction was insufficient. Def. Br. 33. For the reasons described above, sufficient evidence amply supported both verdicts. *See supra*, pp. 37-40. Because White's criticism of the § 924(c) verdict centers solely on his allegation that the government failed to show that he possessed the firearm in question, he waives any alternative argument that even if the government proved possession, it failed to show White carried the firearm during and in relation to a drug-trafficking crime. *See* The Committee on Federal Criminal Jury Instructions of the Seventh Circuit, The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit, at 315 (2020 ed.); *see also United States v. Dabney*, 498 F.3d 455, 460 (7th Cir. 2007). ("Because the argument was not raised or developed in the opening brief, it is waived.").

In any case, it is evident that White refrained from making that argument for strategic reasons in light of the significant case law – along with the expert

44

testimony in this case – stating that a fact finder is entitled to come to a "common-sense conclusion that when someone has both drugs and a firearm on their person" – or, presumably, in their closely held bags – the gun is present to further drug trafficking. *United States v. Johnson*, 916 F.3d 579, 589 (7th Cir. 2019); *see also* Tr. 231-33. This Court has further indicated that a jury may consider the following factors in determining whether an individual carried a firearm in furtherance of – or, presumably, in relation to – drug trafficking including: (1) the type of drug activity that is being conducted, (2) the accessibility of the firearm, (3) the type of firearm, (4) whether the firearm was stolen, (5) whether the firearm possession was legitimate or illegal, (6) whether the firearm was loaded, (7) the proximity of the firearm to drugs, drug profits, or materials used for drug trafficking, (8) the time and circumstances under which the firearm was found, and (9) whether the firearm was used as an object of barter in a drug exchange. *See, e.g., United States v. Perryman*, 20 F.4th 1127, 1134 (7th Cir. 2021); The Committee on Federal Criminal Jury Instructions of the Seventh Circuit, The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit, at 328 (2020 ed.). Here, all of these factors absent the last support the jury's determination that White carried the firearm in question in relation to his marijuana dealing. White was engaged in ounce-level hand-to-hand transactions; the firearm was in a bag with digital scales containing marijuana residue; the firearm was a loaded handgun that had previously been

45

stolen; and the firearm was immediately accessible next to White's drugs and cash. Finally, White's possession of the gun was illegal, and he had transported it with the drugs in someone else's car, showing their proximity was not accidental. *See supra*, pp. 3-15.

## II. The District Court Acted Within Its Discretion In Providing The Jury Instruction Defining "On Or About"

### A. Standard of Review

This Court generally reviews "a district court's decision to give a jury instruction for an abuse of discretion, reversing 'only if the instructions, taken as a whole, misled the jury.'" *United States v. Thomas*, 970 F.3d 809, 815 (7th Cir. 2020).

### B. Analysis

While this Court's "pattern instructions are not 'holy writ,' they . . . 'reflect the collective experience of the judges and lawyers who crafted them and can serve as a helpful starting point.'" *Reyes v. United States*, 998 F.3d 753, 758 (7th Cir. 2021). The "on or about" instruction given in this case is one such pattern instruction. The Committee on Federal Criminal Jury Instructions of the Seventh Circuit, The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit, § 4.05 (2020 ed.).

The instruction provided to the jury stated:

> The indictment charges that the crime happened "on or about" January 29, 2022. The government must prove that the crime

happened reasonably close to the date. The government is not required to prove that the crime happened on the exact date.

R. 32 at 20-21; *see also* Tr. 271.

As the Fifth Circuit has explained, such an instruction merely explains "the meaning of 'on or about'" where, as here, that language is included in an indictment. *United States v. Naidoo*, 995 F.3d 367, 379 (5th Cir. 2021); *see also United States v. Stevenson*, 979 F.3d 618, 625 (8th Cir. 2020) (similar instruction included "proper" definition of "on or about"). And properly so: "[i]t is settled law . . . that the language employed by the government in its indictments becomes an essential and delimiting part of the charge itself, such that if an indictment charges particulars, the jury instructions and evidence introduced at trial must comport with those particulars." *United States v. Miller*, 891 F.3d 1220, 1235 (10th Cir. 2018).

The Court has on several occasions discussed the use of such language in an indictment. In a seminal case, *United States v. Leibowitz*, the Court held that "[u]nless the particular date is an element of the alleged offense, it is generally sufficient [for the government] to prove that the offense was committed on any day before the indictment and within the statute of limitations." 857 F.2d 373, 378 (7th Cir. 1988). The Court explained that "[w]here the indictment alleges that an offense allegedly occurred 'on or about' a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date." *Id.* at 379. The

47

defendant "therefore cannot make the requisite showing of prejudice based simply on the fact that the government has failed to prove a specific date." *Id*. The government is solely obligated to prove the offense occurred on a date "reasonably near" the date cited in the indictment. *United States v. Blanchard*, 542 F.3d 1133, 1143 (7th Cir. 2008). And the Court has held that dates within twenty-one days so qualify. *See Leibowitz*, 857 F.2d at 378; *Blanchard*, 542 F.3d at 1143 (noting propriety of variances between one and three weeks); *cf. United States v. Ross*, 412 F.3d 771, 774 (7th Cir. 2005) (huge discrepancy, such as four years, was not acceptable).

That principal is what the jury instruction explained in this case. The district court thus acted within its discretion in providing it. As this Court has explained, such an instruction is "perfectly consistent" with an indictment charging an offense occurred "on or about" a specific date. *United States v. Adkins*, 743 F.3d 176, 185 (7th Cir. 2014). The Eighth Circuit similarly determined in a felon-in-possession case that such an instruction was "proper" given similar indictment language. *United States v. Alcorn*, 638 F.3d 819, 822 (8th Cir. 2011).

Moreover, White was "on notice" at the outset of his case that the § 922(g)(1) charge in the indictment – which is a continuing offense – was not limited to a specific date. *Leibowitz*, 857 F.2d at 379; *see also United States v. Ellis*, 622 F.3d 784, 793 (7th Cir. 2010), *as amended* (Sept. 27, 2010) ("§ 922(g)(1) felon-in-possession crime is a continuing offense.). Again, the indictment alleged that White possessed

the firearm in question "on or about" January 29, 2022. Despite that language, White did not challenge the indictment language during pretrial motion practice. R. 1; R. 52 at 7.

The discovery provided by the government in this case, which included White's statement that he had touched the firearm a week earlier, put White on further notice that the government might attempt to prove that he possessed the firearm on that earlier date. R. 52 at 8; *see also Leibowitz*, 857 F.2d at 379 (determining defendant was not deprived of evidence essential to his defense prior to trial where government had turned over discovery indicating crime could potentially be proven to have occurred on an earlier date).

Nor was the date listed in the indictment a material element of the felon-in-possession offense that the government was obligated to prove at trial. *See* The Committee on Federal Criminal Jury Instructions of the Seventh Circuit, The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit, at 308 (2020 ed.); *supra*, p. 34. And the government could not be deemed to have constructively amended the indictment in proving that White possessed the firearm a mere week earlier than the date listed in the indictment, where the charging document contained the "on or about" language. *E.g., United States v. Sangiovanni*, 660 F. App'x 651, 656 (10th Cir. 2016). In short, the definitional instruction provided by the district court was wholly appropriate.

49

White nonetheless argues on appeal that the instruction was "unnecessary" and "likely confused" the jury. Def. Br. 34-40. His criticism centers on his allegation that the instruction might have led the jury to incorrectly convict White of possessing a firearm as a felon solely based on his statement that he touched the firearm a week prior to January 29, 2022, an argument that overlaps with his sufficiency-of-the-evidence complaint. Def. Br. 35-37; *see also supra*, pp. 40-43. In making this argument, he also reprises an earlier error by once again failing to consider whether the jury might appropriately determine that White possessed the firearm a week earlier based on that statement *and* the additional evidence presented at trial. Thus, as the district court correctly indicated, "rather than confusing the jury" it was likely that the instruction "clarified the government's burden" to the extent there were two possible dates, per the trial evidence, on which the jury might determine that White possessed the firearm. R. 52 at 8 (quoting *United States v. Kruger*, 75 F.App'x 514, 518 (7th Cir. Aug. 21, 2003) (unpublished)). Moreover, it was the province of the jury to determine if government proved possession on the earlier date, not the job of the district court to limit the government's opportunity to do so based on its own evaluation of the strength of the evidence (absent a Rule 29 determination at least).[6] Even if the

---

[6] In fact, White's attorney ably argued to the jury that White's statement that he touched the firearm a week prior was not enough to show possession. Tr. 341-43.

government's evidence were insufficient (a separate argument), that does not alter the propriety of the instruction.

In any case, even assuming for the sake of argument that the court provided the instruction in error for the reason White states, reversal is not warranted because the jury was not misled and White was not prejudiced. *Thomas*, 970 F.3d at 815. It is evident from the proceedings that the jury held White responsible for his possession of a firearm on January 29, 2022, the date of the traffic stop. White's argument to the contrary ignores the fact that the jury also convicted him of the § 924(c) charge. R. 33 at 2. The strongest evidence of White's drug dealing – the marijuana and cash found in the blue bag over which he claimed ownership – was tethered to the date of his arrest: January 29, 2022. Nor did White or the government suggest that White touched the firearm the prior week in connection with drug trafficking. Yet the jury still determined that White was carrying a firearm during or in relation to a drug-trafficking crime "on or about" January 29, 2022. R. 33 at 2. That shows that the jury determined that White carried – and possessed – the handgun in question on the date of the traffic stop, January 29, 2022. The jury was thus not misled by any purported error nor was White prejudiced. *Thomas*, 970 F.3d at 815.

## CONCLUSION

For the reasons presented above, this Court should affirm the judgment of the district court.

Respectfully submitted,

GREGORY K. HARRIS
  *United States Attorney*

By:   /s/ KATHERINE V. BOYLE
        *Assistant United States Attorney*
        *Office of the United States Attorney*
        *201 South Vine Street, Suite 226*
        *Urbana, Illinois 61802-3369*
        *(217) 373-5875*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and (a)(6), as modified by Cir. R. 32(b), because I have prepared this brief in proportionally spaced typeface using Microsoft Word for Office 365 in 13-point (body) and 12-point (footnotes) Book Antiqua font. I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as modified by Cir. R. 32(c), in that it contains 11,093 words.

/s/ KATHERINE V. BOYLE
*Assistant United States Attorney*

**CERTIFICATE OF SERVICE**

I certify that on November 20, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ KATHERINE V. BOYLE
*Assistant United States Attorney*