No. 23-1315

# In the
# United States Court of Appeals
## for the Seventh Circuit

———————————

United States of America,
*Plaintiff-Appellee*

*v.*

Shamone White,
*Defendant-Appellant*

———————————

On Appeal from the United States District Court for the Central District of Illinois
Case No. 2:22-cr-20012-CSB-EIL-1
The Honorable Colin Stirling Bruce

———————————

**REPLY BRIEF OF DEFENDANT-APPELLANT, SHAMONE WHITE**

———————————

Andrew S. Murphy
Yeoeun Claire Yoon
Nicholas P. Brankle
Gabrielle Ganze
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 312-836-4145
amurphy@taftlaw.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................iii

ARGUMENT.......................................................................................1

I.    The Government's Response Confirms that the Unnecessary "On Or About" Instruction Prejudiced White by Inviting the Jury to Speculate About How He "Touched" the Gun Prior to His Arrest. ........................................1

    A.    The Government Has Waived any Argument that Merely "Touching" a Gun Alone Amounts to Actual Possession....................................................................2

    B.    None of the Evidence Presented at Trial Showed that White's "Touching" of the Gun Prior to His Arrest Amounted to "Actual Possession."..........................3

    C.    The Government Has Also Failed to Justify the Court's Unnecessary "On or About" Instruction..............4

    D.    The Unnecessary Jury Instruction Prejudiced White. ........6

II.    The Government Failed to Prove Beyond a Reasonable Doubt that White Knew the Gray Bag Found in Campbell's Girlfriend's Car Contained a Gun. ...........................7

    A.    The Mere Presence of a Gun Does Not Imply the Gun was Used in Relation to Drug Trafficking.................8

    B.    The Government Overstates the Evidence that White Admitted Knowledge of the Gun Prior to Seeing It. ................................................................12

    C.    The Government's Speculation that Campbell and White Smoke Different Brands of Menthol Cigarettes Does Not Prove White's Knowledge of the Gun Either........................................................13

## TABLE OF CONTENTS
(continued)

D.    The Other Facts and Circumstances Identified by the Government are Insufficient to Show White Knew the Gray Bag Contained a Gun.................................14

CONCLUSION ...................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022)................................................................9

*United States v. Beechler*,
68 F.4th 358 (7th Cir. 2023)................................................3

*United States v. Chairez*,
33 F.3d 823 (7th Cir. 1994).............................................10

*United States v. Farmer*,
717 F.3d 559 (7th Cir. 2013)..............................................7

*United States v. Garcia*,
919 F.3d 489 (7th Cir. 2019)..............................................2

*United States v. Hudson*,
86 F.4th 806 (7th Cir. 2023).......................................13, 14

*United States v. Jones*,
713 F.3d 336 (7th Cir. 2013)..............................................2

*United States v. Roux*,
715 F.3d 1019 (7th Cir. 2013)..........................................11

*United States v. Thomas*,
970 F.3d 809 (7th Cir. 2020)..............................................6

**Statutes**

410 ILCS § 705/10-5 ...........................................................9

625 ILCS 5/11-501 ............................................................11

18 U.S.C. § 924(c) ............................................................................5

**Other Authorities**

Katherine Schaeffer, Key facts about Americans and guns,
(Sept. 13, 2023), https://www.pewresearch.org/short-
reads/2023/09/13/key-facts-about-americans-and-guns/ ..........................10

**ARGUMENT**

I.   <u>**The Government's Response Confirms that the Unnecessary "On Or About" Instruction Prejudiced White by Inviting the Jury to Speculate About How He "Touched" the Gun Prior to His Arrest.**</u>

In its Response, the Government doubles down on its theory that "White's statement that he touched the gun" the week before his arrest "means there's no doubt that he possessed it." (Resp. at 42; Dkt. 80 at 37.) But the Government does not address any of the authorities White cited in his Opening Brief demonstrating that "the mere ability to 'touch' a gun does not amount to possession." (Opening Br. at 30–31.) The Government instead invites this Court to "imagine circumstances in which willingly touching a firearm would fall under the conduct Congress intended to prohibit in passing § 922(g)(1)." (Resp. at 42.) The Government even contends that evidence about White's actions on the date of his arrest would have permitted the jury to infer that "White's prior touching [the week before his arrest] rose to the level of actual possession." (*Id.* at 43.)

The Government's Response confirms that the unnecessary jury instruction invited the jury to speculate about the circumstances under

which White might have possessed the gun prior to the date of his arrest. As discussed further below, however, the Government introduced no evidence whatsoever to provide further context for White's cryptic statement that he had "touched" the gun. It amounts to rank speculation for the Government to suggest that evidence about White's actions on January 29, 2022, supports an inference that "White's prior touching rose to the level of actual possession." (*Id*.) Because speculation is insufficient to prove guilt beyond a reasonable doubt, the Government's Response confirms that the unnecessary jury instruction prejudiced White. *See United States v. Jones*, 713 F.3d 336, 349 (7th Cir. 2013) (holding that insufficient evidence that required the jury to speculate "would not satisfy the high bar of proof beyond a reasonable doubt."); *United States v. Garcia*, 919 F.3d 489, 496 (7th Cir. 2019) (recognizing that "educated speculation" is insufficient to prove guilt beyond a reasonable doubt).

### A. The Government Has Waived any Argument that Merely "Touching" a Gun Alone Amounts to Actual Possession.

As discussed in White's Opening Brief, every circuit court that has considered the question — including this one — has concluded that "it is

error to convict on mere touching alone." (Opening Br. at 30–31) (citing *United States v. Smith*, 997 F.3d 215, 224 (5th Cir. 2021) (citing with approval *United States v. Wilson*, 922 F.2d 1336, 1339 (7th Cir. 1991); *United States v. Teemer*, 394 F.3d 59, 65 (1st Cir. 2005); *United States v. Beverly*, 750 F.2d 34, 37 (6th Cir. 1984); and *United States v. Williams*, 29 F. App'x 486, 488–89 (9th Cir. 2002)). The Government's Response does not discuss *any* of these authorities. To the contrary, the Government appears to acknowledge that actual possession is typically proven by demonstrating that the defendant "held" a firearm for at least some period of time. (Resp. at 35 ("Actual possession can be proven by showing that a felon held a firearm only momentarily.").) The Government has thus waived any argument that merely "touching" a gun necessarily amounts to possession. *See United States v. Beechler*, 68 F.4th 358, 370 (7th Cir. 2023).

### B.   None of the Evidence Presented at Trial Showed that White's "Touching" of the Gun Prior to His Arrest Amounted to "Actual Possession."

The evidence presented at trial with respect to White's possible possession of the gun a week before his arrest consisted entirely of White's

cryptic statement to the arresting deputies that he had "touched" the gun on a prior occasion. (S.A. 16–18.) That's it. The Government introduced no evidence at trial to provide further context for this statement — such as whether the touching was intentional or inadvertent, or whether White even *held* the gun. (Dkt. 79 at 160.) Instead, the Government merely told the jury that "White's statement that he touched the gun …. means there's no doubt that he possessed it." (Dkt. 80 at 37.) But that is not an accurate description of the law, as discussed above and in White's Opening Brief.

## C.    The Government Has Also Failed to Justify the Court's Unnecessary "On or About" Instruction.

As White also discussed in his Opening Brief, the Committee Comment to Instruction 4.05 makes clear that the "one or about" instruction is "unnecessary *in the average case* in which no discrepancy exists between the date charged in the indictment and the date suggested by the evidence at trial." (Opening Br. at 35, 39.) The Government's Brief does not address this Committee Comment, or explain what makes this an atypical case in which the instruction was necessary.

Instead, the Government essentially tries to have it both ways — arguing both that White's mere "touching" of a gun was sufficient to convict him for weapons violations but also the jury clearly convicted him based on the January 29, 2022, traffic stop and discovery of a gun, not White's purported admission that he touched the gun a week prior. (Resp. at 50–51.) White disagrees with the Government's position that it is "evident" the jury convicted White for possession on the date of the traffic stop, but accepting the Government's position as true would merely confirm that the "on or about" instruction was unnecessary. (Resp. at 51.)

Finally, and related to the last point, the Government advances a circular argument that the jury's verdict on Count II somehow confirms that the jury's verdict on Count III was based on "his possession of a firearm on January 29, 2022, the date of the traffic stop" — as opposed to his prior "touching" of the gun. (*See* Resp. at 51 (citing Dkt. 33 at 2).) Count II charged White broadly with carrying a firearm "during or *in relation to*" a drug-trafficking crime. 18 U.S.C. § 924(c). The Government's speculation that the jury wouldn't have convicted White on Count II unless it

"determined that White carried — and possessed — the handgun in question on the date of the traffic stop, January 29, 2022," ignores that the ostensible point of the "on or about" instruction was to spare the government from having to prove the exact date upon which White committed the crimes alleged in the indictment. The unnecessary "on or about" instruction thus permitted the jury to lump the two incidents together and infer that White's purported possession of a gun the week prior to his arrest was "in relation to" a drug-trafficking crime.[1]

### D.     The Unnecessary Jury Instruction Prejudiced White.

White agrees that the "on or about" instruction is appropriate in certain cases, but it was unnecessary here where there was no question that a gun was found in the car in which White was passenger on January 29, 2022. Nonetheless, in an effort to secure a conviction, the Government fought hard for an instruction that was unnecessary in light of the evidence presented at trial. Worse, because merely touching a gun does not amount

---

[1] The only authority the Government cites in support of this argument is *United States v. Thomas*, 970 F.3d 809, 815 (7th Cir. 2020), which is inapposite. The Court's review in *Thomas* was limited to plain error, and it does not involve a situation like this in which the Government asks this Court to speculate about the basis for the jury's verdict.

to possession, the "on and about" instruction was inappropriate and prejudicial in that it invited the jury to convict White for merely "touching" the gun — as opposed to having possession of the gun. Accordingly, Judge Bruce's decision to provide the instruction despite White's objections and the Committee Comment to Instruction 4.05 amounted to an abuse of discretion and prejudiced White. Therefore, if this Court finds the evidence minimally sufficient to sustain the convictions, this Court should remand for a new trial with respect to Counts I and III.

## II. **The Government Failed to Prove Beyond a Reasonable Doubt that White Knew the Gray Bag Found in Campbell's Girlfriend's Car Contained a Gun.**

While this Court must review the evidence in its totality in assessing whether it is sufficient to sustain a conviction, *see United States v. Farmer*, 717 F.3d 559, 563 (7th Cir. 2013), the circumstantial evidence on which the government relies fails to prove beyond a reasonable doubt that White knew the gray bag found in Campbell's girlfriend's car contained a gun.

The Government argues that it proved White possessed the gun in the gray bag for three primary reasons, combined with various suspicious

circumstances: (1) the proximity of the gray bag with the gun to the drugs and guns found in the blue bag and on White's person; (2) White's statement to the deputies that he "touched" the gun on a prior occasion; and (3) White's alleged connection to the Kool cigarettes. (Resp. at 29, 37–40.) Even when viewed in the light most favorable to the Government, this evidence fails to prove beyond a reasonable doubt that White knew about and exercised control over the gun in the gray bag.

## A.     The Mere Presence of a Gun Does Not Imply the Gun was Used in Relation to Drug Trafficking.

During closing argument, the Government repeatedly asserted that it was a matter of "common sense" that the gun in the gray bag must have belonged to White — as opposed to Campbell — because White admitted responsibility for the cash and drugs in the blue bag and on his person. (*See, e.g.*, Dkt. 80 at 23–24 ("[The deputies] used all the information that was at their disposal on January 29th of 2022 to draw a common sense conclusion. Shamone White was a drug dealer; and on that day, he was a convicted felon who was carrying a stolen firearm to protect his illegal drug trafficking trade. Nothing else makes sense. There is no other interpretation of the

evidence that even comes close to making sense."), at 35 ("[Campbell] had no need for a firearm in the gray bag, to be carrying it around, if he had no knowledge of Shamone White's marijuana in the blue bag. In contrast, Shamone White needed these things. A drug dealer definitely needs these things….Which one of these men was engaged in a highly profitable drug trafficking enterprise? Which one of them wasn't? Which one of these men had need for a firearm? Common sense tells us it's the one who's involved in the drug trafficking.") In other words, the Government asked the jury to assume that the gun probably belonged to White — as opposed to Campbell — because White admitted responsibility for a distribution quantity of cannabis, a drug that the State of Illinois legalized for recreational use in 2020. *See* 410 ILCS § 705/10-5.[2]

The Government's suggestion that it is primarily drug dealers who have a "need for a firearm" would be news to the Supreme Court, which has held that "the Second and Fourteenth Amendments protect an individual's

---

[2] The Government's characterization of White as a "known drug dealer" is misleading. White concedes that he possessed a distribution quantity of cannabis on January 29, 2020, but there is no evidence in the record that he has committed other drug-related offenses.

right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 10 (2022). It would also be news to the approximately 42% of American adults who live in a household with a gun. *See* Katherine Schaeffer, *Key facts about Americans and guns*, (Sept. 13, 2023),         https://www.pewresearch.org/short-reads/2023/09/13/key-facts-about-americans-and-guns/. The Government's attempt to conflate the presence of a gun with evidence of criminality contradicts both the Supreme Court's Second Amendment jurisprudence and the lived experience of millions and millions of law-abiding Americans. If the proof beyond a reasonable doubt standard means anything at all, it should mean that a rational jury cannot convict a defendant of possessing a gun based on the illogical assumption that guns are primarily "tools of the drug trade."

The Government has never argued — neither to the jury, nor in response to White's post-trial motions, nor here on appeal — that Campbell and White jointly possessed the gun. So, if the gun did belong to Campbell (or to Campbell's girlfriend, who owned the car) then "[t]he mere fact that both [White] and the gun were in the same car is an insufficient basis for a

factfinder to determine that [White] had knowledge of a firearm."
*United States v. Chairez*, 33 F.3d 823, 825 (7th Cir. 1994) (specifically rejecting
the Government's attempt to rely on expert testimony that "firearms are
usually involved in drug transactions").

Further, nobody with any knowledge about how the gun came to be
in the gray bag testified at trial.[3] Notably, the gun was found in a car White
was not driving, did not own or lease, and did not have any connection to.
Rather, the car was being driven by Campbell and belonged to Campbell's
girlfriend. Despite the Government's argument in closing that Campbell was
unlikely to be driving with a gun because "he'd been pulled over multiple
times recently," the Government did not introduce any evidence that
Campbell (or his girlfriend) were prohibited from possessing a gun.
(Dkt. 80 at 35–36); *see also* 625 ILCS 5/11-501 (providing that first and second
convictions for driving under the influence are typically misdemeanors).
Under these circumstances, the mere presence of the gun in the car along

---

[3] The Government's observes (Resp. at 42 n.5) that Campbell defied subpoenas from both
the Government and White, but it was not White's burden to produce witnesses at trial.
*See United States v. Roux*, 715 F.3d 1019, 1031 (7th Cir. 2013).

with the drugs for which White accepted responsibility does not support an inference that White had knowledge of the gun prior to the traffic stop.

**B.**     **The Government Overstates the Evidence that White Admitted Knowledge of the Gun Prior to Seeing It.**

The Government also suggests that White's admission to the deputies that he "touched" the gun the Saturday before his arrest proves that White knew which gun was in the gray bag before the deputies showed him the gun. (Resp. at 38.) But White did not describe the gun to the deputies, and the Government's argument ignores that Campbell was the only other person in the car with White when the duo encountered the deputies. If the gun did not belong to White, then White could have easily inferred from the circumstances that the gun was likely one that belonged to Campbell (or perhaps to Campbell's girlfriend). But the fact that White may have encountered the gun on a prior occasion does not establish that White knew — prior to Deputy Zirkle bringing the gun to White's attention — that the gun was in the car on January 29, 2022. Nor does it establish that White exercised control over the gun on either occasion.

C.    **The Government's Speculation that Campbell and White Smoke Different Brands of Menthol Cigarettes Does Not Prove White's Knowledge of the Gun Either.**

As set forth in the Opening Brief, Deputy Able-Bernier admitted at trial that his decision to attribute the gun to White instead of Campbell "really came down" to Deputy Able-Bernier's belief that Campbell and White smoke two different brands of menthol cigarettes. (Opening Br. at 9–12.) But the supposed link between White and the Kool cigarettes consisted of nothing more than the fact that the deputies found packs of Kool cigarettes in White's pocket and in the gray bag with the gun, whereas they found packs of Newport cigarettes in the car's driver's side door, the center console, and the dash area. (Resp. at 11–12.) Nobody testified at trial about which cigarettes each man prefers, or the brand of cigarettes Campbell supposedly bought at the liquor store. Likewise, as the Government concedes, Campbell's hearsay statements about the cigarettes were not played for the jury. (Resp. at 15 n.4.)

The Government cites a single inapposite case, *United States v. Hudson*, 86 F.4th 806, 814–15 (7th Cir. 2023), for the proposition that

Deputy Able-Bernier's forthright testimony about why his investigation led him to attribute the gun to White — as opposed to Campbell — is "irrelevant" to an analysis of whether the Government proved its case to the jury beyond a reasonable doubt. In *Hudson*, this Court affirmed the denial of a motion to suppress because the evidence failed to show that medical staff were acting as agents of law enforcement for purposes of the Fourth Amendment — despite a law enforcement official's testimony that he believed the medical staff were acting as his agents. That is a far cry from the situation here where the deputies described their on-scene investigation and admitted that they could have been mistaken in their belief that the Kool cigarettes established a connection between White and the gun.

### D. The Other Facts and Circumstances Identified by the Government are Insufficient to Show White Knew the Gray Bag Contained a Gun.

The other facts and circumstances discussed in the Government's Response also fail to prove White's knowledge of and control over the gun. The Government notes that the gray bag with the gun also included scales with cannabis residue. (Resp. at 11, 38.) But the same expert who opined that

the scales found in the gray bag were "indicative of someone involved in [drug] trafficking" also opined that having a cell phone is somehow indicative of drug trafficking. (Dkt. 79 at 191.) More importantly, the expert also admitted that drug users — like Campbell — sometimes carry digital scales. (*Id.* at 197; S.A. 31 (Campbell stating to the deputies that he had a blunt in the car).) Likewise, the government notes that both bags included items that White might be expected to take with him to the trip to the hotel where he told the deputies he was staying (a toothbrush in the gray bag and deodorant and underwear in the blue bag). But there was no evidence introduced at trial that these extremely common items belonged to the same person, which only underscores the lack of any forensic analysis conducted on the toothbrush, the gun, the Kool cigarettes, or any of the other physical evidence the Government recovered.

Ultimately, none of the suspicious facts the Government identifies amount to proof beyond a reasonable doubt that White knowingly possessed the gun — even when those facts are viewed in their totality and in the light most favorable to the Government.

## CONCLUSION

The government failed to prove beyond a reasonable doubt that White knew the gray bag contained a gun, and the totality of the circumstances reflect that the Court's unnecessary jury instruction prejudiced White. Accordingly, this Court should reverse White's convictions on Counts I and III of the indictment, or alternatively, vacate the convictions and remand the case for a new trial.

Dated: December 21, 2023          Respectfully submitted,

/s/ *Andrew S. Murphy*
Andrew S. Murphy
Yeoeun Claire Yoon
Nicholas P. Brankle
Gabrielle Ganze
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
(312) 312-836-4145
amurphy@taftlaw.com

*Attorneys for Shamone White*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

I, Andrew S. Murphy, attorney for Defendant-Appellant Shamone White, certify that this brief complies with the type-volume limitation of Circuit Rule 32(c) because it contains 3,274 words, including footnotes and excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as modified by Circuit Rule 32(b), because it has been prepared in 14-point Palatino Linotype, a proportionally spaced typeface, using Microsoft Office Word 2016.

*/s/ Andrew S. Murphy*
Andrew S. Murphy

## CERTIFICATE OF SERVICE

I certify that on December 21, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Andrew S. Murphy*
Andrew S. Murphy
